# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MELVIN E. GRESHAM,                    :
                                      :
    Plaintiff,                :          Civil Action No.:      11-1178 (RC)
                                      :
    v.                        :          Re Document No.:       38
                                      :
DISTRICT OF COLUMBIA,                 :
                                      :
    Defendant.                :

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Plaintiff Melvin Gresham brings this employment discrimination action against his employer, the District of Columbia ("District"), alleging claims under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  Pending before the Court is the District's motion for summary judgment, on the grounds that, *inter alia*, this case is barred by *res judicata*.  *See* ECF No. 38. For the reasons that follow, the Court will grant the District's motion.

## II.  FACTUAL BACKGROUND

The Plaintiff Melvin Gresham is currently a Second District Captain for the Metropolitan Police Department ("MPD").  *See* Def.'s Statement Undisputed Facts ¶ 1, ECF No. 38.  He has been an MPD employee since 1984.  *Id*.  In 2008 and 2009, Cpt. Gresham brought three other lawsuits involving similar factual allegations to the ones brought in this suit, and as such, the Court will chronicle the facts of each to provide a cohesive background.

## A. *Gresham v. Lanier*, 08-cv-1117

On June 27, 2008, Cpt. Gresham ("Plaintiff") brought suit against MPD, MPD Chief Cathy Lanier, and several other officers of the MPD. Plaintiff alleged, *inter alia*, that in 2004, he "was ordered to 'target' Lt. Ronda Nunnally and to assist other uniformed officers in driving her from the police workforce." Compl. ¶ 10, ECF No. 38-5. Lt. Nunnally had filed a lawsuit in 2004 against MPD for, *inter alia*, sex discrimination, and Plaintiff agreed to testify on her behalf, because he had witnessed another officer physically assault her. Compl. ¶¶ 11–12. He alleged that he was offered a promotion if he changed his testimony and denied that he was ordered to target Lt. Nunnally. Compl. ¶ 14. Plaintiff allegedly reported these attempts by the District of Columbia Assistant Attorney General to "suborn perjury," in an affidavit to the Superior Court judge in Lt. Nunnally's case. Compl. ¶¶ 14–15. Ultimately Superior Court Judge Combs-Green did not allow Plaintiff to testify in Nunnally's case because she found the bribery allegations to be "very serious," and was disappointed Plaintiff's attorney had made such allegations against other attorneys. Compl. ¶¶ 15–16.

Meanwhile, in the same complaint, Plaintiff also made allegations that his co-worker, Lieutenant Michael Smith, had been subject to several disciplinary actions including: (1) an incident occurring on October 6, 2007 involving Smith harassing another police officer; (2) an incident occurring in March 2008 where Smith was reprimanded for violations of Department policy on mailing tickets to those charged with violations; and (3) an incident occurring in April 2008 where Smith was disciplined for misconduct. *See* Compl. ¶¶ 17–21. In those allegations, he also described what discipline, if any, Smith incurred for his behavior.

In addition, Plaintiff alleged that on or around January 7, 2008, someone "anonymously" reported that Plaintiff had abused his police powers by using his rank to influence and intimidate

an investigating officer to alter an investigative report, in connection with a metro bus accident Plaintiff had been "involved in [in] a police scout car while on duty." Compl. ¶¶ 22–23.[1] Plaintiff believed the anonymous report to be written by Lt. Smith based on a comparison of the one page anonymous letter with transcript testimony of Lt. Smith. Compl. ¶ 24. In connection with the metro bus incident, Plaintiff also alleged that someone at MPD "leaked" the allegations against him to the media, describing Plaintiff "as a police officer that had abused his power to avoid liability in an accident with a metro bus." Compl. ¶ 23. Because of Plaintiff's conduct regarding that incident report and investigation, Chief Lanier recommended that Plaintiff be "summoned before a trial board with the intent that he be discharged from the police force." Compl. ¶ 27. Ultimately, the charges against Plaintiff were withdrawn, but he was still issued an Official Reprimand. Compl. ¶¶ 28–29. Plaintiff finally alleged that he "has been DENIED promotions, and subjected to a hostile work environment all in retaliation for his Whistleblower activities and his refusal to participate in illegal acts of retaliation against fellow police officers." Compl. ¶ 31.

In that action, Plaintiff asserted causes of action for (1) MPD's violation of 5 U.S.C. § 2301(b)(8), (2) MPD's violation of D.C. Code § 1-615.51 *et seq.* (D.C. Whistleblower Protection Act), (3) Breach of Contract, *see* Compl. ¶ 44 (alleging that MPD "had a duty to Cpt. Gresham by way of the terms of employment to provide him every employment opportunity to be fairly

---

[1]        Though Plaintiff alleges in *this* complaint that this accident happened while he was in a police scout car *on duty*, it is clear from the complaint in the current action and the record that the only metro bus incident relevant to the Plaintiff and this case is the one that occurred while Plaintiff was *off duty* on November 27, 2007. *See* Pl.'s Ex. 2, ECF No. 40-2 ("An anonymous letter was forwarded to the Internal Affairs Division. It indicated that on Tuesday, November 27, 2007, Captain Melvin Gresham, Third District, was involved in a traffic accident while in an off-duty capacity in the 1500 Block of U Street, N.W.").

considered for promotion, to avoid being targeted for retaliation, or otherwise harassed"), (4)

Defamation, and (5) Intentional Infliction of Emotion[al] Distress.

The District moved to dismiss under Federal Rule of Civil Procedure 12(b)(4) for failure

to effect proper service pursuant to Federal Rules of Civil Procedure 4(e) and 4(j). *See* Defs.'

Mot. to Dismiss 1, *Gresham v. Lanier*, No. 08-1117, ECF No. 12 (D.D.C. Oct. 28, 2008). In a

minute order dated December 9, 2008, the Court granted that motion, saying that "[t]he

complaint is dismissed without prejudice. The plaintiff is permitted to file a new and properly

served complaint naming only the District of Columbia as a defendant provided the complaint is

filed within 30 days." *See Gresham v. Lanier*, No. 08-1117, Minute Order (D.D.C. Dec. 9,

2008).

### B. *Gresham v. District of Columbia*, 09-cv-0029

In accordance with the district court's minute order, Plaintiff re-filed his 2008 lawsuit

against MPD in 2009. In a new complaint filed January 8, 2009, Plaintiff alleged essentially the

same facts that he alleged in his 2008 lawsuit. *See* Compl. ¶¶ 4–14, *Gresham v. District of

Columbia*, No. 09-0029, ECF No. 1 (D.D.C. Jan. 8, 2009) (describing the 2004 lawsuit Lt.

Nunnally had filed and Plaintiff's instruction from superiors to drive her from the workplace and

not to testify on her behalf, the various disciplinary incidents of Lt. Smith, and the accident with

the metro bus in which Plaintiff was accused of violating his police powers to intimidate a junior

police officer investigating the accident).

However, in this new suit, Plaintiff asserted three causes of action against the District: (1)

violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983 by "initiating an adverse

prosecutorial action against him for speaking out against corruption and discriminatory treatment

of fellow officers by agents of the District of Columbia;" *see* Compl. ¶ 19, (2) violation of the

D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*, for taking "adverse retaliatory action against him for his refusal to join in retaliatory, discriminatory and harassing acts against other uniformed officers targeted for discharge;" *see* Compl. ¶ 22, and (3) Intentional Infliction of Emotion[al] Distress.

The district court ultimately dismissed the Plaintiff's First Amendment 42 U.S.C. § 1983 claim on the grounds that the Plaintiff "failed to show that his injuries resulted from an unconstitutional policy or practice for which the District can be held liable." *See* Memorandum 1, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 24 (D.D.C. Aug. 3, 2009). The district court declined to exercise supplemental jurisdiction over the Plaintiff's state law claims and dismissed those counts without prejudice. *See* Memorandum at 5–6; *see also* Order, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 25 (D.D.C. Aug. 3, 2009) ("[D]efendant's motion to dismiss, treated as a motion for summary judgment . . . is granted as to Count I. Counts II and III are dismissed without prejudice."). After Plaintiff amended his complaint to assert diversity jurisdiction as a basis upon which to keep his state claims alive, the court dismissed Plaintiff's complaint entirely, on the basis that the Plaintiff could not assert a diversity jurisdiction claim against the District of Columbia as defendant—because the District is not a "citizen of a state"—citing *Long v. District of Columbia*, 820 F.2d 409, 414 (D.C. Cir. 1986). *See* Memorandum 1, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 32 (D.D.C. Sept. 9, 2009); Order, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 33 (D.D.C. Sept. 9, 2009). The Plaintiff appealed that decision, *see* ECF No. 34, and the D.C. Circuit affirmed the district court's dismissal of the case. *See* ECF No. 36. Thus, Count I was ultimately dismissed on the merits, and Counts II & III were ultimately dismissed for lack of subject matter jurisdiction (though not explicitly couched as such).

### C.  *Hoffman v. Lanier*, 08-cv-1924

Meanwhile, in November 2008, Plaintiff filed another lawsuit, joined by seven other plaintiffs, against the District of Columbia and the United States Drug Enforcement Agency ("DEA").  The suit arose out of an incident that occurred on Plaintiff's property located at 2905 Georgia Avenue, NW, on July 31, 2008.  *See* Am. Compl. ¶ 11, *Hoffman v. Lanier*, No. 08-1924, ECF No. 2 (D.D.C. Nov. 26, 2008).  The property was owned by Plaintiff, but he leased it to the District of Columbia Housing Authority, who in turn screened and placed families in the residence under its Section 8 Program.  Am. Compl. ¶ 20.  Plaintiff, along with seven others present at the time, alleged that they were victims of a DEA/MPD raid of that property.  Am. Compl. ¶¶ 1–8.  They alleged that Chief Lanier, agents of the Office of the District of Columbia Attorney General, and agents of the United States Attorney's Office authorized unlawful surveillance operations and an unlawful search and seizure of the Plaintiff's Georgia Avenue property.  Am. Compl. ¶¶ 23–26.  They also alleged that during the "raid," officers "threatened to use deadly force, and did terrorize the plaintiffs putting them in fear of loss of life."  Am. Compl. ¶ 27.

Plaintiff alleged that "from July 2007 to December 2007, agents of the DCMPD developed and executed a program of retaliation against Captain Gresham . . . [with] [t]he objective [being] to dismiss Caption [sic] Gresham from DCMPD employment."  Am. Compl. ¶ 13.  Plaintiff alleged that he "became the target of the defendants for . . . whistleblower actions against corrupt DCMPD officers, and to [sic] in retaliation against him for his refusal to give false testimony against Lt. Nunnally in another civil case."  *Id.*  Plaintiff again raised the allegations regarding Lt. Smith and the "anonymous" complaint initiated against him for abusing his police powers in connection with an accident report in January 2008.  Am. Compl. ¶ 14.

Plaintiff also reiterated his allegations against Lt. Smith, explaining that "Lt. Smith has a history of disciplinary problems." Am. Compl. ¶ 18.

The eight plaintiffs brought the following fifteen causes of action against both the MPD and the DEA: (1) violation of First Amendment rights under 42 U.S.C. § 1983,[2] (2) violation of Fourth Amendment rights under 42 U.S.C. § 1983, (3) violation of Fifth Amendment rights under 42 U.S.C. § 1981, (4) violation of the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*; (5) Defamation, (6) Invasion of Privacy-False Light, (7) Assault, (8) Battery, (9) Malicious Prosecution, (10) Theft, (11) Intentional Infliction of Emotional Distress, (12) Violation of the District of Columbia Human Rights Act, (13) Aiding and Abetting, (14) Conspiracy, and (15) Declaratory Judgment. *See generally* Am. Compl. Important to this Court's analysis, the cause of action for violation of the District of Columbia Human Rights Act alleged that "Chief Lanier authorized a series of discriminatory acts against Captain Gresham on account of his race (African-American), and DENIED him promotion, sought to fire him and authorized raids on his property and defamatory comments against him." Am. Compl. ¶ 74.

The various claims in this case were disposed of for various reasons. First, as to the federal defendants, the district court granted their motion to dismiss, on the grounds that (1) plaintiffs did not exhaust their administrative remedies for their tort claims under the Federal Tort Claims Act—which is jurisdictional under that statute—and (2) the plaintiffs could not state a claim against the United States under 42 U.S.C. § 1983, 42 U.S.C. § 1981, or their D.C. causes of action because those statutes do not apply to federal actors. The court also dismissed the

---

[2] This Count was brought only by plaintiffs Cpt. Gresham and Angela Hoffman. Counts III (42 U.S.C. § 1981 violation), IX (Malicious Prosecution), and XIV (Conspiracy) were also brought only by these two plaintiffs, and Counts IV (D.C. Whistleblower Protection Act violation) and XII (D.C. Human Rights Act violation) were brought only by Cpt. Gresham. The rest of the counts were brought by all eight plaintiffs.

plaintiffs' claim for a declaratory judgment because of the absence of a live case or controversy. *See* Mem. Op. 1, *Hoffman v. Lanier*, No. 08-1924, ECF No. 35 (D.D.C. Aug. 17, 2009). The judgment as to the federal actors was thus entered in part on jurisdictional grounds (as to the tort claims) and in part on the merits (as to the federal and D.C. statutory causes of action). Second, as to the District of Columbia defendants, the district court granted their motion to dismiss as conceded, because the plaintiffs failed to respond. *See* Mem. Op. 13–14, *Hoffman v. Lanier*, No. 08-1924, ECF No. 44 (D.D.C. Feb. 4, 2010) ("Here, the plaintiffs have failed to respond to the District's arguments for dismissal of the plaintiffs' claims against it. The plaintiffs have not offered any excuse for their failure to respond in a timely fashion, nor have they moved for leave to late-file an opposition. Accordingly, the court grants the District's motion to dismiss as conceded and dismisses all claims asserted against the District."). The plaintiffs filed two motions for reconsideration, both of which were denied, *see* ECF Nos. 45, 50, 52, and then filed a notice of appeal. *See* ECF No. 53. The D.C. Circuit found that appellants' notice of appeal was only timely as to the district court's order denying their second motion for reconsideration, and summarily affirmed the district court. *See* ECF No. 56.

### D. Factual allegations in this case

In this action, the Plaintiff alleges similar facts that are more helpfully understood in the context of the parties' statements of facts. On November 27, 2007, Plaintiff was involved in an off-duty car accident when a WMATA bus operator ran into his personal vehicle. *See* Pl.'s Statements of Material Facts No. 25 (citing Pl.'s Ex. 2, Pl.'s Ex. 16 at 51–52), ECF No. 40. On January 7, 2008, the Internal Affairs Division of the MPD received an anonymous report that Plaintiff had exercised undue influence over an officer responsible for investigating an accident in which Plaintiff was involved. *See* Def.'s Ex. B, ECF No. 38-2. An investigation was

conducted, and Plaintiff was ultimately issued an Official Reprimand on May 21, 2008. *See id.*

Plaintiff believes that white officers generally were and are disciplined less harshly than black

officers (including himself) in the MPD for engaging in similarly egregious or more egregious

conduct. *See* Pl.'s Statement of Material Facts No. 33. Some of the incidents to which Plaintiff

refers include:

- A 2011 incident involving Lt. VB, a white officer who allegedly intimidated a
  Congressional Aide and the wife of a U.S. Congressman in an off-duty accident, and
  who was only officially reprimanded for such conduct. *See* Pl.'s Statement of
  Material Facts No. 34.

- A white detective being convicted in D.C. Superior Court of two counts of simple
  assault in 2010, and MPD's failure to terminate him. *See* Pl.'s Statement of Material
  Facts No. 37.

- A 2010 alleged incident involving a white officer kidnapping a Hispanic male; MPD
  did not investigate the allegations. *See* Pl.'s Statement of Material Facts No. 38.

- A 2010 incident where a white officer was charged with failing to respond for duty in
  May 2011, making a false statement, and falsifying an Official MPD document.
  Charges against this officer were sustained but MPD did not seek to terminate his
  employment. *See* Pl.'s Statement of Material Facts No. 41.

- A 2012 incident where a white officer was alleged to have made a comment that he
  would assassinate the First Lady. MPD did not criminally charge the officer. *See*
  Pl.'s Statement of Material Facts No. 42.

- The 2008 and continuing allegations and incidents involving Lt. Smith. *See* Pl.'s
  Statement of Material Facts Nos. 43–49; *see also* Pl.'s Resp. to Def.'s Interrogatory

16, ECF No. 40-5 (describing incidents ranging from 2008 through 2012, involving, *inter alia*, Lt. Smith, the white officer who threatened to assassinate the First Lady, and Lt. VB).

The present action was filed on June 27, 2011, with an amended complaint filed on October 26, 2011. *See* ECF Nos. 1 & 9. In the Amended Complaint, Plaintiff alleges that he "was disparately disciplined in comparison to fellow White police officers for similar action, and Plaintiff had allegations of misconduct against him aggressively pursued by DCMPD." Am. Compl. ¶ 11. Plaintiff further alleges that in 2008, he "was accused of misconduct by another officer; his termination was proposed; he was ordered to face a Trial Board; and was issued a letter of reprimand for conduct unbecoming an officer." *Id.* ¶ 12. Plaintiff then makes several allegations that "White officers have been accused of and found to have been guilty of misconduct. However, the White officers were not disciplined in some instances, and not disciplined as severely as Plaintiff, in other instances." *Id.* ¶ 13. Some of the other allegations include that "on or about 2009 a White officer was accused of hacking into someone's email account and was not charged by the department, even though he could have been charged criminally," and "in 2011, a White officer was found to have falsified a report regarding leave slips and was not made to face a Trial Board, and he only received a ten (10) day suspension; on or about 2008 or 2009, another White officer was involved in a fatal shooting and allegedly later tested positive for drugs but yet he was not subjected to discipline as warranted by the Department's policies and procedures." *Id.* Plaintiff also claimed that "DCMPD brought a false complaint against Plaintiff alleging the release of false and misleading information to local media outlets." *Id.* ¶ 14. He further alleged that "[s]ince 2007 and continuing to the present . . . White officers have engaged in a pattern of misconduct, which violates DCMPD policies and

procedures, including making false allegations against Plaintiff," *see id.* ¶ 18, and that "[b]etween 2007 and the present, Plaintiff has been repeatedly and continually subjected to a hostile work environment." *Id.* ¶ 23. His final general factual allegation is that "[d]ue to Plaintiff's race, and in retaliation for Plaintiff complaining about discrimination, DCMPD has engaged in a campaign designed to force Plaintiff to resign his position and ruin his career." *Id.* ¶ 24. Plaintiff further claims that "[d]espite many complaints and challenges to the unfair and discriminatory treatment, management, including the Chief of Police has failed and refuses to take effective action to end the unfair treatment." *Id.*

Plaintiff has asserted five claims in this action. The first is a claim for Race Discrimination and Hostile Work Environment under Title VII of the Civil Rights Act of 1964, wherein he alleged as examples that he "was targeted by his coworkers; false allegations were made upon him; a rental unit thought to be his residence was raided for allegedly having drugs on the premises; he was informed by the Attorney General that his rental unit would be investigated as a nuisance and threatened that his unit could be seized; he was required to go through a formal hearing on the matter, which resulted in him and his tenants being cleared of all the charges; he was advised that a Departmental official told another officer to do a background check on him; on or about October 2, 2008, [and] another officer informed him that he was told by a Departmental official to 'find anything on [Plaintiff] that the Department could use against him.'" Am. Compl. ¶ 36.

The second count is for Retaliation/Reprisal/Hostile Work Environment, also under Title VII, where Plaintiff alleges that "[o]n or about 2005, an employee named Plaintiff as a witness in her EEO complaint. In October 2007, Plaintiff maintains that he was approached during the official investigation by Defendant regarding the allegations asserted in her EEO complaint.

When questioned, he refused to change his position of what he believed occurred. In 2008, Plaintiff was called to testify in support of her federal EEO case." *Id.* ¶ 43. He claimed that "[a]s a direct result of Plaintiff's complaints of workplace discrimination and his participation in his coworker's EEO complaint, he was subjected [sic] retaliation and a hostile work environment." *Id.* ¶ 44. He elaborated that "[t]he adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity." *Id.* ¶ 47. He also reiterated the factual allegations regarding his Georgia Avenue property and the false allegations allegedly made against him by other officers. *Id.* ¶ 48.

Plaintiff's third cause of action asserts a claim for race discrimination under 42 U.S.C. § 1981, asserting as a predicate the Fifth Amendment. Plaintiff's fourth cause of action asserts a claim for race discrimination under 42 U.S.C. § 1983, also asserting as a predicate the Fifth Amendment. His fifth cause of action is one for Equitable Relief.[3]

*       *       *

The District has moved for summary judgment arguing first that the Plaintiff's claims are barred by *res judicata*, based on Plaintiff's filing of three prior actions "arising from the same nucleus of operative facts as this action." *See* Def.'s Mot. Summ. J. 2, 6–8, ECF No. 38. In the alternative, the District argues that it is entitled to judgment on Plaintiff's claims because no reasonable jury would find for Plaintiff on his Title VII claims, and 42 U.S.C. §§ 1981 and 1983 are not appropriate channels for Plaintiff to challenge the District's alleged misconduct. *See* Def.'s Mot. Summ. J. 2, 8–14. The Court agrees that Plaintiff's claims are barred by *res*

---

[3]     Count V is for "Equitable Relief," wherein Plaintiff seeks, *inter alia*, EEO training for his supervisors. This count does not state a substantive cause of action, but rather represents a claim for relief based on Defendant's alleged discriminatory behavior. The Court accordingly construes Count V as a Prayer for Relief, not as a substantive cause of action.

*judicata*, and will therefore grant defendant's motion for summary judgment for the reasons that follow.

### III.  ANALYSIS

#### A.  Legal Standard on a Motion for Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant.  *See Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## B. Res Judicata

"Also known as claim preclusion, the doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004). *Res judicata* bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813–14 (D.C. Cir. 2010) (citations omitted); *see also Smalls v. U.S.*, 471 F.3d 186, 192 (D.C. Cir. 2006) (same). The parties dispute the first three elements of the *res judicata* test, and accordingly, the Court will analyze those elements in turn.

### a. The prior actions arose from the same nucleus of facts

The first factor in the *res judicata* analysis is known as the "identity" element, and is defined as follows: "there is an identity of the causes of action when the cases *are based on the same nucleus of facts* because it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory on which a litigant relies." *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (emphasis added) (internal quotation marks and citations omitted). "To determine whether two cases share the same nucleus of facts, the Court considers whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *McIntyre v. Fulwood*, 892 F. Supp. 2d 209, 215 (D.D.C. 2012) (citing *Stanton v. Dist. of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997)).

The Court will discuss the counts separately because they allege different facts that change the analysis; the Court will begin with Count II, as it can be disposed of most quickly.

1. Count II: Title VII: "Retaliation/Reprisal/Hostile Work Environment"

In Count II specifically, Plaintiff makes the following factual allegations already raised in his prior lawsuits:

- Plaintiff references being named as a witness in a co-worker's EEO complaint in 2005, and that "he was approached during the official investigation by Defendant regarding the allegations asserted in her EEO complaint. When questioned, he refused to change his position of what he believed occurred." Am. Compl. ¶ 43.

- He alleges that "[a]s a direct result of Plaintiff's complaints of workplace discrimination and his participation in his coworker's EEO complaint, he was subjected [sic] retaliation and a hostile work environment." *Id.* ¶ 44.

- "The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously engaged in protected EEO activity." *Id.* ¶ 45.

- He also describes the "raid" on his Georgia Avenue property, that he was "targeted by his coworkers" and that "false allegations were made upon him." *Id.* ¶ 48.[4]

Plaintiff alleged these same facts in all three prior actions, and importantly, alleged that he was retaliated against and harassed by Lt. Smith, Chief Lanier, and other members of the MPD for engaging in EEO and whistleblowing activity. Specifically, in his first 2008 lawsuit, Plaintiff alleged that he "has been DENIED promotions, and subjected to a *hostile work environment* all in *retaliation* for his Whistleblower activities and his refusal to participate in

---

[4]        Allegations in paragraph 48 of Count II appear to be duplicative of allegations in paragraph 36 in Count I. Because the Court analyzes paragraph 36 in section B.a.2, that analysis is equally applicable to paragraph 48.

illegal acts of retaliation against fellow police officers." Compl. ¶ 31, No. 08-1117, ECF No. 1

(emphasis added). He also alleged that MPD breached its contractual duty to him "to avoid

being targeted for *retaliation, or otherwise harassed*." Compl. ¶ 44 (emphasis added). In his

other 2008 lawsuit, Plaintiff alleged that "from July 2007 to December 2007, agents of the

DCMPD developed and executed a program of *retaliation* against Captain Gresham . . . [with]

[t]he objective [being] to dismiss Caption [sic] Gresham from DCMPD employment." Am.

Compl. ¶ 13, No. 08-1924, ECF No. 2 (emphasis added). He also alleged that he "became the

target of the defendants for . . . whistleblower actions against corrupt DCMPD officers, and to

[sic] in *retaliation against him* for his refusal to give false testimony against Lt. Nunnally in

another civil case." *Id.* (emphasis added).

    Plaintiff pursued these claims seeking legal relief under the D.C. Whistleblower

Protection Act and 42 U.S.C. § 1983 for First Amendment violations. Plaintiff fails to identify

any reason he could not have *also* brought retaliation and/or hostile work environment claims

under Title VII in any of his prior suits, given that the factual allegations giving rise to this count

are the same as those brought in his prior suits.[5] Indeed, Plaintiff brought a DC Human Rights

---

[5]     Though the issue was not raised by the parties, the Court queried whether Plaintiff
was waiting for his EEOC right-to-sue letter before filing his Title VII claims—which he did not
receive until March 29, 2011. *See* Am. Compl. ¶ 8, ECF No. 9. Plaintiff states in his EEO
Statement of Facts that he filed an EEOC complaint in March 2008, and that as of November
2010, that complaint had not been resolved. *See* Pl.'s Ex. 8 at 1, ECF No. 40-8. He also stated
in his deposition that he filed an EEOC complaint in the spring of 2008. *See* Gresham Dep. at
111:22–112:3, ECF No. 38-1. A party may file a civil action 180 days after filing an EEOC
charge, if the EEOC has not yet completed its investigation of the party's charge. *See* 42 U.S.C.
§ 2000e-5(f)(1) ("If a charge filed within the Commission pursuant to subsection (b) of this
section is dismissed by the Commission, or if within one hundred and eighty days from the filing
of such charge . . . the Commission has not filed a civil action . . . the Commission shall so notify
the person aggrieved . . . ."); *see also* U.S. EEOC website, "Filing a Lawsuit," available at
http://www.eeoc.gov/employees/lawsuit.cfm (last accessed August 15, 2014) ("If you want to
file a lawsuit before we have finished our investigation, you can request a Notice of Right-to-
Sue. If more than 180 days have passed from the day you filed your charge, we are required by

Act claim—analyzed under the same legal framework as federal employment discrimination and retaliation claims, *see DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 40 (D.D.C. 2008)— in the 2008 "raid" suit where he alleged that "Chief Lanier authorized a series of discriminatory acts against Captain Gresham on account of his race (African-American), and DENIED him promotion, sought to fire him and authorized raids on his property and defamatory comments against him." Am. Compl. ¶ 74, *Hoffman v. Lanier*, No. 08-1924, ECF No. 2. Because Plaintiff does not identify any reason that prevented him from asserting employment discrimination claims on the basis of race in that suit, he is not entitled to another bite of the same factual apple now.

Although Plaintiff previously claimed that the retaliation he suffered was based on his First Amendment protected activity or his whistle-blowing activities and now claims that the retaliation was based on his EEO protected activities, such a change in theory does not change the outcome. *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 800 F. Supp. 2d 182, 191–92 (D.D.C. 2011) *aff'd*, 682 F.3d 1043 (D.C. Cir. 2012) ("Since 'claim preclusion precludes the litigation of *claims*, not just *arguments*, the plaintiff cannot re-litigate an issue

---

law to give you the notice if you ask for it."). Thus, Plaintiff could have brought his Title VII claims as early as late-2008 (180 days after sometime in the Spring of 2008) in connection with his prior lawsuits, and did not necessarily have to wait until March 2011 when he got his official right-to-sue letter. Alternatively, he could have amended his prior complaints to include Title VII claims, or moved for stays in his prior suits, while the EEOC decided his Title VII claims. *See Graham v. Gonzales*, No. 03-1951, 2005 WL 3276180, at *4 (D.D.C. Sept. 30, 2005) (explaining a plaintiff's alternatives if he finds himself at a crossroads between waiting for a right-to-sue letter and fearing res judicata: "Alternatively, he could have filed an action in advance of his right to sue on the Title VII claims, but moved to stay proceedings until his right-to-sue date had passed. Or, he could have requested, after October 6, 2002 [180 days after the EEOC charge was filed], to add his Title VII claim by amendment to the complaint he filed in June."); *see also Owens v. Kaiser Foundation Health Plan, Inc.,* 244 F.3d 708, 714–15 (9th Cir. 2001) ("[W]e now join our sister circuits in holding that Title VII claims are not exempt from the doctrine of *res judicata* where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims.").

simply by asserting a different legal claim . . . .The fact that the plaintiff asserts a different legal claim [on the same facts] does not preclude application of *res judicata*.") (internal quotation marks and citations omitted) (emphasis in original); *Youngin's Auto Body v. District of Columbia,* 775 F. Supp. 2d 1, 7 (D.D.C. 2011) ("[F]or the purposes of claim preclusion, the legal theory upon which the plaintiff relies is irrelevant; rather, the relevant inquiry is whether the plaintiff's claims arise out of the same 'common nucleus of facts' as the [earlier litigation].") (internal citation omitted). Any claim for retaliation—under any legal theory—could have and should have been brought when Plaintiff alleged that he was being retaliated against for engaging in protected activity—whether under the D.C. Whistleblower Protection Act or Title VII. Similarly, any claim alleging a hostile work environment—again under any legal theory—could have and should have been brought in prior suits where Plaintiff alleged that he was harassed and subjected to a hostile work environment, given that those claims arise from the same facts previously alleged by Plaintiff. Case law is clear that parties are barred from bringing subsequent lawsuits for claims that *should have and could have been raised* in previous litigation. *See Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 376 n.1 (1985) (explaining that claim preclusion refers to "the preclusive effect of a judgment in foreclosing litigation of *matters that should have been raised in an earlier suit*") (emphasis added); *Capitol Hill Grp., LLC*, 569 F.3d at 491 ("[R]es judicata . . . bars relitigation not only of matters determined in a previous litigation *but also ones a party could have raised*[.])" (citing *NRDC v. Thomas,* 838 F.2d 1224, 1252 (D.C. Cir. 1988)) (emphasis added). Accordingly, Plaintiff's Count II for "Retaliation/Reprisal/Hostile Work Environment" under Title VII arises from the same nucleus of facts raised in his prior suits, and satisfies this element of the *res judicata*

analysis. As set forth below, because the other prongs of the analysis are also met, this count is barred in its entirety by *res judicata*.

2. Counts I, III, IV & V

The other four counts in Plaintiff's complaint are slightly more complicated because those counts rehash old facts arising from Plaintiff's prior suits, and also allege new facts that arose subsequent to the judgments in his prior suits, as ongoing conduct by the defendant. Plaintiff claims that he seeks "redress for the wrongs he was subjected to by the District since 2007 to the present, and not just what occurred in 2007." *See* Pl.'s Opp'n Mot. 19, ECF No. 40. Specifically, Plaintiff alleges that from 2007 or 2008 *through present*, he has been subjected to more harsh discipline than white officers. *See* Am. Compl. ¶¶ 11, 12, 13, 27. To support these claims, Plaintiff cites factual examples that arose prior to, and were alleged in his 2008 and 2009 lawsuits. *See* Am. Compl. ¶¶ 12, 13; *see also* Pl.'s EEO Statement of Facts, ECF No. 40-8 (explaining incidents with Lt. Smith that occurred in 2007 and 2008, the metro bus incident, and Plaintiff's Official Reprimand). He also adds factual support from incidents occurring in 2009, 2010, 2011, and 2012. *See* Am. Compl. ¶ 13; *see also* Pl.'s Answer to Interrogatory No. 16, ECF No. 40-5 (chronicling incidents of bad conduct by white officers of various ranks from 2009 through 2012 and whether or not they were disciplined for such conduct).

It is true that "[r]es judicata does not preclude claims based on facts not yet in existence at the time of the original action." *See Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002). However, Plaintiff's "new" factual allegations are not actionable because they do not amount to new acts of discrimination or retaliation *against Plaintiff*; rather they simply provide more comparator evidence to suggest that the discipline the Plaintiff received in 2008 or earlier was

discriminatory.[6] Counts I, III, and IV are specifically for race discrimination under Title VII and 42 U.S.C. §§ 1981 & 1983, and for hostile work environment under Title VII. The "unequal discipline" Plaintiff alleges he was subjected to has not changed at all; the only adverse employment actions he alleges he suffered are the same in the prior suits as in this one—his proposed termination, the investigation by Internal Affairs, and the resulting reprimand for exercising undue influence in connection with a metro bus accident in 2008. *Compare* Am. Compl. ¶¶ 14–17, No. 08-1924, ECF No. 2 *and* Am. Compl. ¶¶ 13–14, No. 09-0029, ECF No. 28 (prior suits), *with* Am. Compl. ¶ 12, No. 11-1178, ECF No. 9 (present action) ("In 2008, Plaintiff was accused of misconduct by another officer; his termination was proposed; he was ordered to face a Trial Board; and was issued a letter of reprimand for conduct unbecoming an officer.").

---

[6] Courts have struggled with whether post-judgment events are barred by *res judicata*, but have generally been able to draw a line where the new facts give rise to a new cause of action. *See Storey v. Cello Holdings, LLC*, 347 F.3d 370, 384 (2d Cir. 2003) ("[C]laim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim."); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 112–114 (2d Cir. 2000) (finding that new facts asserted by the plaintiff are "nothing more than additional instances of what was previously asserted," and as such the new facts were still based principally upon the common nucleus of operative facts at issue in the prior lawsuit, and were barred by *res judicata*); *see also Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006) ("The question is not whether the alleged predicate acts occurring after the state court judgment would support an independent RICO claim. The question is whether adding those predicate acts to the acts occurring in 1993 and 1994 can revive RICO claims that are otherwise barred. 'The doctrine of *res judicata* would become meaningless if a party could relitigate the same issue . . . by merely positing a few additional facts that occurred after the initial suit.'") (quoting *Dubuc v. Green Oak Tp.*, 312 F.3d 736, 751 (6th Cir. 2002)); *Crawford v. Chabot*, 202 F.R.D. 223, 227 n.1 (W.D. Mich. 1998) (explaining that the new facts that arose after plaintiff filed his first state court lawsuit were "part and parcel of the earlier incidents forming the basis of plaintiff's complaint in state court," and as such, were a mere outgrowth of the prior state court action and thus arose out of the same transaction or occurrence as that lawsuit and were barred by *res judicata*). As set forth above, the "new" facts alleged here constitute mere comparator evidence and do not give rise to a new cause of action. Even if this new comparator evidence were actionable, however, it is evident that these examples are merely attempts by Plaintiff to bolster a claim that already could have and should have been brought, and would therefore be barred by *res judicata,* following the guidance of *Misischia* and *Waldman*.

The facts giving rise to this cause of action have not changed either; rather, Plaintiff has *added more examples* of white officers engaging in misconduct and the resulting disciplinary action (or lack thereof) taken by MPD.  *But Plaintiff had sufficient facts to bring these discrimination claims in his prior suits even without these additional allegations*, given that he made numerous allegations that Lt. Smith was subjected to less harsh discipline than Plaintiff, citing incidents from 2007 and 2008.  *See, e.g.*, Am. Compl. ¶ 18, *Hoffman v. Lanier*, No. 08-1924, ECF No. 2 (explaining prior charges against Lt. Smith by MPD), Pl.'s EEO Statement of Facts, ECF No. 40-8 (describing numerous instances in 2008 where Lt. Smith's misconduct was reported, but nothing was done about it by Plaintiff's superiors).  Accordingly, these counts also arise from the same nucleus of facts as Plaintiff's prior suit, satisfying the first element of *res judicata*.

Moreover, any non-comparator factual allegations, *i.e.*, Am. Compl. ¶¶ 29, 36, 48, were also already brought in Plaintiff's prior suits and are likewise barred by *res judicata*. Specifically, Plaintiff's allegation regarding being disciplined for "allegedly yelling in the street in the 1500 Block of U Street, N.W.," appears to arise out of the same metro bus accident that resulted in Plaintiff's only disciplinary action, as that incident occurred in the 1500 Block of U Street on November 27, 2007.  *See* Pl.'s Ex. 2, ECF No. 40-2 & Pl.'s Ex. 23 at 2, ECF No. 40-23 (describing the November 27, 2007, metro bus accident that resulted in the adverse employment action against Plaintiff as occurring on the 1500 Block of U Street).  As set forth above, Plaintiff has already brought several prior lawsuits arising out of his actions and subsequent discipline from this metro bus accident, and any other causes of action arising from that accident are barred by *res judicata*.

Plaintiff's other non-comparator factual allegations in these counts were also already brought in *Hoffman v. Lanier*.  Specifically, here Plaintiff alleges that "he was informed by the

Attorney General that his rental unit would be investigated as a nuisance and threatened that his unit could be seized . . . [and] he was advised that a Departmental official told another officer to do a background check on him." Am. Compl. ¶¶ 36, 48. He also alleges that on or around October 2, 2008, "another officer informed him that he was told by a Departmental official to 'find anything on [Plaintiff] that the Department could use against him.'" Am. Compl. ¶¶ 36, 48. However, Plaintiff already made these factual allegations in *Hoffman v. Lanier*. *See* Am. Compl. ¶¶ 32, 33, *Hoffman v. Lanier*, No. 08-1924, ECF No. 2 (alleging that the U.S. Attorney for the District of Columbia "has threatened criminal action to seize [Plaintiff's] property alleging that it presents a nuisance," and alleging that Senior managers at DCMPD ordered seizure of, *inter alia*, Cpt. Gresham's computer "to find anything . . . that they . . . could use against him."). Accordingly, causes of action arising from these factual allegations are also barred by *res judicata*, as they were already brought in one of Plaintiff's prior lawsuits.

### b. The parties are in privity

Meanwhile, as to the second *res judicata* factor, one in privity with another is said to be one "so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved." *Jefferson School of Social Science v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963); *accord McIntyre*, 892 F. Supp. 2d at 215. The Plaintiff argues that the complaint here differs from the complaints in *Gresham v. Lanier*, 08-cv-1117, and *Hoffman v. Lanier*, 08-cv-1924, because the current suit names only the District as defendant whereas the previous suits named multiple police officers as defendants as well. *See* Pl.'s Opp'n Mot. 19–20. The Plaintiff also argues that in *Hoffman v. Lanier*, he was one of eight plaintiffs. *Id.* at 20. These differences are of no legal consequence. The defendant here is the District of Columbia, who was named as a defendant in all of the

Plaintiff's prior lawsuits.  Moreover, in *Hoffman v. Lanier*, the Plaintiff named the individual

officers in their official capacities, and then amended his complaint to name only the District of

Columbia, given that a suit against an officer in his official capacity is the same as a suit against

the District.  *Compare* Compl., ECF No. 1 (Nov. 6, 2008) *with* Am. Compl., ECF No. 2 (Nov.

26, 2008), *Hoffman v. Lanier*, No. 08-1924; *see also Blue v. District of Columbia*, 850 F. Supp.

2d 16, 23 (D.D.C. 2012) ("Based upon the understanding that it is duplicative to name both a

government entity and the entity's employees in their official capacity, courts routinely dismiss

claims against the officials to conserve judicial resources when the entity itself is also sued.")

(citing *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 57 n.3 (D.D.C. 2011)).  And in

*Gresham v. Lanier*, the Plaintiff originally named police officers without specifying whether it

was in their official capacities and later filed a motion to amend his complaint to name only the

District of Columbia as defendant—presumably for the same reason.  *See* Pl.'s Mot. to Amend

Complaint, *Gresham v. Lanier*, No. 08-1117, ECF No. 14 (D.D.C. Nov. 24, 2008).  Indeed, the

court in that case dismissed the case without prejudice, instructing Plaintiff to name only the

District of Columbia as defendant, which Plaintiff later did.  *See Gresham v. Lanier*, No. 08-

1117, Minute Order (D.D.C. Dec. 9, 2008) ("[T]he complaint is dismissed without prejudice.

The plaintiff is permitted to file a new and properly served complaint naming only the District of

Columbia as a defendant provided the complaint is filed within 30 days.").  Finally, there is a

similarity in factual allegations, as set forth above, and thus, the District here similarly

"represents precisely the same legal right in respect to the subject matter of the case . . . ."

*McIntyre*, 892 F. Supp. 2d at 215.  Accordingly, this *res judicata* factor is met.

*c. The prior actions constitute final judgments on the merits*

As to the third and last disputed element of the res judicata analysis, the District argues that the prior actions were decided on the merits; not surprisingly, the Plaintiff argues that none of the three lawsuits were dismissed on the merits. To determine whether they were, the Court analyzes each dismissal.

The first lawsuit, *Gresham v. Lanier*, was dismissed under Federal Rule of Civil Procedure 12(b)(4) for failure to effect proper service. In a minute order, the district court granted the defendant's motion to dismiss without prejudice. *See Gresham v. Lanier*, No. 08-1117, Minute Order (D.D.C. Dec. 9, 2008) ("[T]he complaint is dismissed without prejudice. The plaintiff is permitted to file a new and properly served complaint naming only the District of Columbia as a defendant provided the complaint is filed within 30 days."). This did not constitute a dismissal on the merits, as it is axiomatic that a dismissal without prejudice does not constitute a dismissal on the merits with claim preclusive effect. *Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 134 (D.D.C. 2012) ("If the prior action has been dismissed without prejudice, there has been no final judgment on the merits, and a plaintiff will not be precluded by the doctrine of res judicata from having his claims heard on the merits in a separate court.") (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983)); *Ponder v. Chase Home Fin., LLC*, 865 F. Supp. 2d 13, 17 (D.D.C. 2012) ("It is . . . beyond dispute that a dismissal without prejudice does not determine the merits.") (citation omitted).

That lawsuit, however, was re-filed in 2009, naming only the District of Columbia as a defendant. *See generally* Compl., *Gresham v. District of Columbia*, No. 09-0029, ECF No. 1 (D.D.C. Jan. 8, 2009). That suit alleged three counts: (1) a 42 U.S.C. § 1983 claim for violating the Plaintiff's First Amendment rights in retaliation for "initiating an adverse prosecutorial action

against him for speaking out against corruption and discriminatory treatment of fellow officers by agents of the District of Columbia," *see* Compl. ¶¶ 18–19; (2) a claim for violation of the D.C. Whistleblower Protection Act, for taking "adverse retaliatory action against him for his refusal to join in retaliatory, discriminatory and harassing acts against other uniformed officers targeted for discharge," Compl. ¶ 22; and (3) a claim of Intentional Infliction of Emotional Distress for "erroneously charging him with conduct the consequence of which if substantiated could have resulted in his loss of employment." Compl. ¶ 25. The district court treated the defendant's motion to dismiss Count I as one for summary judgment and granted that motion; Counts II and III were initially dismissed without prejudice. *See* Order, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 25 (D.D.C. Aug. 3, 2009) ("[D]efendant's motion to dismiss, treated as a motion for summary judgment . . . is granted as to Count I. Counts II and III are dismissed without prejudice."). Thus, as to Plaintiff's 42 U.S.C. § 1983 First Amendment claim, the district court issued a decision on the merits barred on *res judicata* grounds. *See* FED. R. CIV. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

After granting the Plaintiff leave to amend his complaint, the court ultimately dismissed the Plaintiff's entire complaint. *See* Order, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 33 (D.D.C. Sept. 9, 2009) ("For the reason set forth in the accompanying memorandum, plaintiff's complaint is dismissed"). However, that dismissal was one for lack of subject matter jurisdiction, as the court specified in the accompanying memorandum that "[t]he District's response to [the] order of the court, treated as a motion to dismiss for want of subject matter jurisdiction, will be granted. Plaintiff's remedy, if he has one, must be pursued in the courts of

the District of Columbia."  *See* Memorandum, *Gresham v. District of Columbia*, No. 09-0029, ECF No. 32 (D.D.C. Sept. 9, 2009).  A dismissal for lack of subject matter jurisdiction does not constitute adjudication on the merits with claim preclusive effect.  *See Miller v. Saxbe*, 396 F. Supp. 1260, 1261 (D.D.C. 1975) ("Such a dismissal on jurisdictional grounds is not 'on the merits' for res judicata purposes and consequently is 'without prejudice' to a subsequent action raising the same or similar underlying facts if different grounds for jurisdiction are claimed.") (citing FED. R. CIV. P. 41(b)); *see also* 18A FED. PRAC. & PROC. JURIS. § 4436 (2d ed.) ("There is little mystery about the res judicata effects of a judgment that dismisses an action for lack of subject-matter or personal jurisdiction or for improper venue.  Civil Rule 41(b) provides that a dismissal for lack of jurisdiction or improper venue does not operate as an adjudication upon the merits.").  Thus, in this initial action, the D.C. Whistleblower Protection Act and Intentional Infliction of Emotional Distress claims were not adjudicated on the merits.  However, these two claims were alternative theories for recovery under the same facts as the First Amendment claim, which *was* adjudicated on the merits.  Thus, an adjudication on the merits of the First Amendment claim encompassed all of the factual allegations that these two other claims were based on, for purposes of *res judicata*.

Even if that were not the case, all of Plaintiff's counts against the District were ultimately adjudicated on the merits in *Hoffman v. Lanier*.  In that case, the plaintiffs brought 15 counts, including one for Intentional Infliction of Emotional Distress and one for violation of the D.C. Whistleblower Protection Act (and this count was brought by Plaintiff *only*).  *See* Counts IV & XI, Am. Compl., *Hoffman v. Lanier*, No. 08-1924, ECF No. 2.  Though the Plaintiff was one of eight plaintiffs, and his main issue in that lawsuit was the July 31, 2008 raid on his Georgia Avenue property, Plaintiff in that action still raised the same allegations against the District

regarding Lt. Smith, Lt. Nunnally, the metro bus accident, and the Plaintiff's purported termination. Am. Compl. ¶¶ 13–19, 49. Importantly, Plaintiff also raised a claim against the District under the D.C. Human Rights Act where he alleged that "Chief Lanier authorized a series of *discriminatory acts against Captain Gresham on account of his race (African-American)*, and DENIED him promotion, *sought to fire him* and authorized raids on his property and defamatory comments against him." Am. Compl. ¶ 74 (emphasis added). All of the counts against the District of Columbia[7] were ultimately dismissed for plaintiffs' failure to respond to the defendants' dispositive motion. *See* Memorandum 13–14, *Hoffman v. Lanier*, No. 08-1924, ECF No. 44 (D.D.C. Feb. 4, 2010) ("[T]he plaintiffs have failed to respond to the District's arguments for dismissal of the plaintiffs' claims against it. The plaintiffs have not offered any excuse for their failure to respond in a timely fashion, nor have they moved for leave to late-file an opposition. Accordingly, the court grants the District's motion to dismiss as conceded and dismisses all claims asserted against the District."). Courts have found conceded motions to be dismissals on the merits for purposes of *res judicata*. *See Sae Young Kim v. Nat'l Certification Comm'n for Acupuncture & Oriental Med.*, 888 F. Supp. 2d 78, 82 (D.D.C. 2012) ("Although the motion was treated as conceded pursuant to Local Civil Rule 7(b), it was a final valid judgment on the merits . . . . [T]hus, *res judicata* applies, barring plaintiffs from relitigating their claims.") (internal citations omitted); *Porter v. U.S. Capitol Police Bd.*, 816 F. Supp. 2d 1, 5 (D.D.C. 2011) ("Granting a motion as conceded constitutes a final judgment on the merits for claim-preclusion purposes because the parties had a full and fair opportunity to litigate the claim

---

[7] Before deciding the District of Columbia's motion to dismiss, the district court granted the United States' motion to dismiss all counts—partly on jurisdictional grounds and partly for failure to state a claim. *See* Order, *Hoffman v. Lanier*, No. 08-1924, ECF No. 34 (D.D.C. Aug. 17, 2009). Because the United States is not a party to the current action, the Court need not elaborate on that disposition but provides the information by way of background.

in the prior action."); *Calica v. Comm'r of Soc. Sec.,* 601 F. Supp. 2d 203, 205 (D.D.C. 2009) ("[B]ecause [plaintiff] did not respond to the defendant's motion to dismiss . . . she was deemed to have conceded the matters raised in the defendant's motion . . . and an order of dismissal was entered that was based on the merits of the case . . . ."); *Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 91 (D.D.C. 2009) ("The fact that *Poblete I* was dismissed as conceded pursuant to Local Civil Rule 7(b) is of no moment, given that the purpose of claim preclusion is 'to preclude parties from contesting matters that they have had a full and fair *opportunity* to litigate.'") (emphasis added by citing court) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)); *Cf. Proctor v. Millar Elevator Svc. Co.*, 8 F.3d 824, 824 (D.C. Cir. 1993) (explaining that under Federal Rule of Civil Procedure 41(b), "a dismissal for failure to prosecute 'operates as an adjudication upon the merits' unless the district court in its order 'otherwise specifies.'"). Ultimately, then, all of Plaintiff's claims—for retaliation under any legal theory, hostile work environment under any legal theory, and discrimination under the DC Human Rights Act—were dismissed on the merits. Accordingly, this prong of the *res judicata* test is also satisfied, and all of Plaintiff's claims are barred on *res judicata* grounds.

In sum, Count II arises from the same nucleus of facts as Plaintiff's prior actions, and the remaining counts—though adding comparator evidence that post-date Plaintiff's other lawsuits—likewise arise from the same nucleus of facts because they represent Plaintiff's attempt to bolster retaliation, discrimination, and hostile work environment claims that already could have and already should have been brought in his prior suits. In addition, the parties are in

privity with one another, and Plaintiff's prior lawsuits have been adjudicated on the merits.  As such, this entire action is barred by *res judicata*, and judgment will be entered for the District.[8]

## IV.  CONCLUSION

For the foregoing reasons, the District's motion for summary judgment is GRANTED.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  September 5, 2014                              RUDOLPH CONTRERAS
                                                       United States District Judge

---

[8]     In the alternative, the District argues that the Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims fail to state a claim, and that no reasonable jury could find for Plaintiff on his Title VII claims.  Though discovery is now over, the parties have not provided the Court with enough analysis to properly assess these arguments.  Because the Court relies upon *res judicata* as a basis upon which to enter judgment for the District, it need not delve into the merits.